**DALLAS ARTS FOUNDATION, INC.**

v.

**AMERICAN FILM THEATER, INC.**

No. CA 3–74–144–C.

United States District Court,
N. D. Texas,
Dallas Division.

Sept. 17, 1974.

Patrick C. Guillot, Collie, McSpedden & Roberts, Dallas, Tex., for plaintiff.

Ray B. Williamson, Shank, Irwin, Conant, Williamson & Grevelle, Dallas, Tex., for defendant.

OPINION

WILLIAM M. TAYLOR, Jr., Chief Judge.

This case was removed by Defendant to this Court under the authority of 28 U.S.C. 1441. Jurisdiction is based on 28 U.S.C. 1332, diversity of citizenship. No issues of jurisdiction and venue have been raised and the Court affirmatively finds and concludes that it has jurisdiction of the subject matter and of the parties and that venue is proper.

■ Plaintiff is a non-profit organization, founded to foster the arts in Dallas, Texas. Defendant is a corporation that produced a series of high quality motion pictures for limited distribution in 1973 and 1974. These films were shown on a limited basis as to seating capacity and numbers of showings. Each of the films was shown only on the same two days all across the United States.

Plaintiff, through its President Betty Ann Wilkie, entered into negotiations with Defendant through its agent Jean Carpenter with an eye on the possibility of buying a portion of the seating at the Preston Royal Theater in Dallas, Texas, for the series of films. First, it was represented that tickets had been sold to other persons so that Plaintiff could not contract for the whole theater. Then Defendant changed its representation and misrepresented that no tickets had been sold to anyone else and that Plaintiff could purchase the seating for the entire theater for the series. Plaintiff was greatly encouraged to do so by Mrs. Carpenter.

Plaintiff's plans were to make the series a big social event. Tickets were to be sold at vastly inflated prices with a large part eligible for an income tax write-off. Plans were also made for a buffet to be held at the theater before the showings. Plaintiff greatly relied on the representation of exclusivity and entered into a contract with Defendant for the entire seating capacity of the Preston Royal Theater. Pursuant to the contract which Defendant induced it to enter into, Plaintiff paid to Defendant $21,870.00 for the tickets for each of the seats of the Preston Royal Theater for the opening night showing of each film of the series. Also, Plaintiff expended the sum of $16,005.24 for publicity, the buffet and so forth in reasonable reliance upon Defendant's representation. These expenditures were foreseeable by the parties at the time that Plaintiff was induced to enter into the contract. Indeed, Plaintiff was induced to make these expenditures by Defendant, its agent, Mrs. Carpenter, even helping in the planning of the events.

Plaintiff would not have entered into the contract with Defendant except for the misrepresentations by Defendant and its agent, and Defendant and its agent knew of the scope of the expenditures that Plaintiff was going to make and did make.

Defendant after the contract was entered into continued to advertise to third parties that they could purchase tickets from Defendant. It has also admitted to selling at least 51 tickets to persons other than Plaintiff. Indeed, persons appeared at the opening night of the first film with telegrams that stated that Defendant had not had sufficient time to process their ticket orders but that the telegrams would get them into the Preston Royal Theater that Defendant had misrepresented to Plaintiff that it had bought out completely.

On that first Monday night of the series, quite a few people showed up with tickets or telegrams sold by Defendant. They demanded entrance to the theater and quite a to-do occurred but not of the type originally contemplated. Plaintiff's credibility and reputation were quite considerably damaged and Plaintiff was even investigated by the Consumer Affairs Division of the City of Dallas.

Because of all this, Plaintiff could no longer sell its tickets at the charitably inflated prices of $50.00 or $100.00. But it did sell what it could at the same price as Defendant was selling tickets. In all, Plaintiff took in $16,445.25 from sale of tickets which it has held in escrow pending the solution of this dispute. Plaintiff did sell these tickets at the greatly reduced price in an effort to mitigate the damages.

Subsequent to all of this, Plaintiff sued Defendant in Texas State Court for fraud and it was removed to this Court. Since the time of the removal, Defendant has treated Plaintiff with the same cavalier disregard.

■ Plaintiff has clearly shown that there was fraud in the inducement by

500

Defendant and Plaintiff is entitled to rescission of the contract. Defendant's conduct was in bad faith. The damages that Defendant owes to Plaintiff are found to be the $21,870.00 as a return of Plaintiff's consideration for the contract, $16,005.24 as reasonably foreseeable consequential damages and $10,000.-00 as punitive damages.[1] Defendant is allowed a set-off in the sum of $16,445.-25 though, the amount of the ticket sales receipts. Plaintiff's attorney is requested to prepare and submit appropriate form of judgment.

1. See McDonough v. Zamora, 338 S.W.2d 507 (San Antonio, Tex.Civ.App.1960), as to punitive damages allowable when a contract is involved. The Court finds that this is an action in fraud, that there was an independent fraud committed other than a mere breach of the contract.